MAUDE L. KEENAN v. THE MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK.

Argued June 3, 1908—Decided November 9, 1908.

A policy of insurance contained the condition that if the age of the
insured shall have been understated, the amount of insurance or
other benefit will be equitably adjusted. It was discovered after
his death that the insured, who had stated his age as forty-five,
was, in fact, forty-six years of age. *Held*, that an equitable ad-
justment would consist in paying the beneficiary such an amount
as the premiums actually paid would have insured at the true age
of the insured.

On rule upon the plaintiff to show cause why a new trial
should not be granted.

Before Justices REED, BERGEN and VOORHEES.

For the rule, *Edward A. & William T. Day.*

*Contra, William M. Clevenger.*

The opinion of the court was delivered by

REED, J. On June 29th, 1903, James R. Keenan insured
his life in the Mutual Life Insurance Company of New York,
for the benefit of his wife, Maude L. Keenan. The total
amount of his insurance was $20,000, covered by two policies
for $10,000 each. Mr. Keenan died on March 15th, 1907.

In his application for the policies he stated that he was born
March 23d, 1858. It is admitted that he was born a year
earlier, so that instead of being forty-five when insured he was
forty-six years of age. Each policy was written subject to
the provisions, requirements and benefits stated on its back.
One of these provisions is as follows: "The company will
admit the age of the insured upon satisfactory proof; failing
such proof, if the age shall have been understated the amount
of insurance or other benefit will be equitably adjusted."

The company paid to the plaintiff, who was the beneficiary, the sum of $9,616 on each policy, this being the amount which the annual premiums of $393.60 paid by the insured would, if paid by a person forty-six years of age, purchase.

This action is brought to recover $384 on each policy, being the difference between $9,616 paid on each and the full amount insured on each policy, namely, $10,000.

On the trial the theory upon which the recovery by the plaintiff rested was that the insured should have paid each year on each policy $409.30 instead of $393.60, and that the difference each year—$15.70—together with the interest upon each payment for the number of years the policy was in force, should be deducted from the face value of the policy.

This theory seems to have been adopted by the jury, which returned a verdict for the plaintiff for $646.66.

The contract of life insurance is one in which, in consideration of the payment annually, semi-annually, or quarterly of a fixed sum by the insured, the company agrees to pay a certain amount to the insured, or to his named beneficiary, upon the event of the death of the insured. The annual or stated sum to be paid by the insured is fixed by his expectancy of life. In calculating this expectancy one, perhaps the chief, element to be regarded is the age of the insured at the time of the execution of the contract. The calculated period during which the annual or other fixed premiums are to be paid is the basis upon which the amounts of each annual or fixed premium or stated premium is fixed. These premiums are so adjusted that the risk of death from year to year during the period of life expectancy will be paid for in advance. The younger the insured the less the risk of death, and so the less the periodical payments for the insurance of a particular amount.

A person, therefore, who states his age as forty-five when he is, in fact, forty-six years of age, is getting an insurance against a risk for which he is not paying. In the absence of fraud on the part of the insurer—when he deserves nothing—it is equitable that in case of his death the company shall pay so much as the insured has paid for, and no more.

The theory upon which the verdict was found violates the scheme upon which the contract is based. Instead of this theory being one under which the risk is paid for in advance it becomes one which compels the company to assume a risk upon credit, and the amount credited is never to be paid by the insured during his life, but is only to be deducted by the company from the amount of the policy upon his death. Such a system if applied to the entire amount of premiums would be inconceivable in practice, for it would not merely bankrupt the insurance company but would make it impossible for the company to accumulate any assets to meet its losses. Any theory which leads to such a result cannot be equitable.

On the trial one Berry produced what he styled rules enforced by the Mutual Life Insurance Company. One of these rules was headed "Changes of Age," and read: "Increased payment payable in the future will be made subject to the payment of the difference of premium with 5 per cent. compound interest." This rule covered instances where, during the life of the insured, it was discovered that he had understated his age. For this reason the witness gave it as his opinion that, equitably, the company should take the same course upon the death of the insured, in adjusting the amount to be paid. The opinion of the witness was of no value whatever. He had never known of an adjustment made after the death of the insured under these conditions. He knew of no rule in the insurance world respecting an equitable adjustment. He was entirely disqualified to give an opinion on what was an equitable adjustment, and his testimony should have been overruled.

But assuming that the rule of the company is in evidence it has no significance respecting the question to be now solved. When the understatement is discovered before the death of the insured, the company has the right to do one of two things: To say to the insured, *first,* "Your policy can stand for the amount for which you have paid," or, *second,* "If you choose to pay what you should have paid, with interest, then, in consideration of that payment, and in consideration of full pay-

ment in the future of the amount of premiums proper at your age, we will put you upon the footing of a full-paid premium paying insured." This, it is perceived, is a mere change of contract. The company had the right during the life of the insured to make a new contract. Up to that time the insured had only been insured for the amount for which he had paid, and if death occurred before a new adjustment the old contract controlled—and rightly so. But when he had paid what he should have paid, and agreed to pay the new rate, the company received in advance the consideration for the future risk in excess of the old risk. At no time had the company insured him on credit.

The inequity of the rule insisted upon by the plaintiff is that it is not uniform in its results, and would operate with great hardship upon an insured who lived to a great age, and the difference of whose stated age and whose real age was considerable. Mr. Bunyon gives an instance where the application of this rule left nothing to be returned by the insurance company. *Buny. Ins.* 115.

On the other hand, the rule that the amount paid shall be what the insured paid for in advance is adopted by the legislature of this state (*Pamph. L.* 1907, *pp.* 133, 134), and by the legislatures of six other states. Although the statute in our state was passed subsequent to the execution of the contract in this case, it exhibits the legislative sense of what is equitable in the present situation.

We think the verdict must be set aside, and a new trial granted.

We think, also, the court should have directed a verdict for the defendant.